IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

SARAH VICKERS, et al.,           )
                                 )
    Plaintiffs,                  )
                                 )
v.                               )     No. 07-2172 Ml/P
                                 )
GENERAL MOTORS CORPORATION, et   )
al.,                             )
                                 )
    Defendants.                  )
                                 )
                                 )

_____

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM GENERAL MOTORS**
_____

Before the court by order of reference is plaintiffs' Motion to Compel Discovery from General Motors Corporation (D.E. 81.) For the reasons below, the motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

The plaintiffs' Third Amended Complaint alleges that on June 11, 2006, on Highway 72 in Mississippi, Sarah Vickers was driving westbound in her vehicle, a 2005 Yukon that was designed, manufactured, assembled, and distributed by General Motors Corporation ("GM"). The tires on the Yukon were purchased by James M. Vickers, Sarah's husband, approximately two months earlier, on April 17, 2006. At the time, Sarah Vickers was

wearing her safety belt. Passengers in the Yukon included James Vickers and their two minor daughters, Caroline Vickers and Mary Taylor Vickers. While driving in the passing lane, the left front tire of the vehicle momentarily eased into the gravel shoulder. Sarah Vickers attempted to slow the vehicle down while maneuvering to the right so as to get all four wheels back in the lane of travel. During the course of this maneuver, the Yukon began to "fish tail" (or yaw) in an unexpected fashion and then shot quickly back across the lanes of westbound traffic. During the course of this maneuver, the Yukon began to yaw violently, the wheels lifted, and the vehicle began to roll over. The vehicle ultimately landed in a ditch, and as a result of the rollover, each passenger in the Yukon sustained severe personal injuries.

Plaintiffs allege that GM and Takata Corporation; Takata North America, Inc.; TK Holdings, Inc.; Takata Seat Belts, Inc.; Takata Restraint Systems, Inc.; and Takata U.S.A. Corporation ("Takata Defendants") were aware of the high probability of serious injury or death to the occupants of sport utility vehicles, such as the Yukon, in the event of a rollover, particularly when the roof was weak enough to crush into the

passenger compartment and/or the seat belts would not keep the vehicle's occupants restrained properly and inside the vehicle.

Plaintiffs allege that despite having this knowledge, GM manufactured the Yukon in such a manner that it was unreasonably susceptible to rolling over without an occupant protective system that would sufficiently protect all occupants of the vehicle in the event of a rollover incident. Plaintiffs further assert that the Yukon was deceptively marketed by GM in a way that led consumers to believe that the vehicle was safe, stable, and provided good, state of the art protection in the event of a crash.

Plaintiffs also claim that the safety belts in the Yukon were designed, manufactured, and assembled by the Takata Defendants, that GM provided specifications to the Takata Defendants, that GM installed the safety belts and buckles into the Yukon, that both GM and the Takata Defendants tested the buckles and safety belt components, and that GM caused the Yukon to be marketed, advertised, and represented as containing qualities that it did not have. Plaintiffs bring causes of action based on strict liability, negligence, breach of warranty, and negligent misrepresentation.[1]

---

1. Plaintiffs also claim that defendant Gateway Tire & Service Center improperly installed LT 285/70R17 tires on the Yukon and

## II. ANALYSIS

Federal Rule of Civil Procedure 26(b)(1) allows for the discovery of "any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). Relevancy for discovery purposes is construed broadly. Discoverable evidence need not be admissible at trial; rather, material is discoverable if it is "reasonably calculated to lead to the discovery of admissible evidence." Id. "Nevertheless, discovery does have 'ultimate and necessary boundaries,'" Miller v. Fed. Express Corp., 186 F.R.D. 376, 383 (W.D. Tenn. 1999) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)), "and 'it is well established that the scope of discovery is within the sound discretion of the trial court.'" Id. (quoting Coleman v. Am. Red Cross, 23 F.3d 1091, 1096 (6th Cir. 1994)). A court need not compel discovery if "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(iii).

Once an objection to the relevance of the information sought is raised, the party seeking discovery must demonstrate that the requests are relevant to the claims or defenses in the pending action. Allen v. Howmedica Leibinger, 190 F.R.D. 518, 522 (W.D.

---

that these tires violated GM's tire and wheel size recommendations.

Tenn. 1999). If that party demonstrates relevancy, the party resisting discovery bears the burden of demonstrating why the request is unduly burdensome or otherwise not discoverable under the Federal Rules. United Oil Co. V. Parts Assocs., Inc., 227 F.R.D. 404, 411 (D. Md. 2005); MJS Janitorial v. Kimco Corp., No. 03-2102, 2004 WL 2905409, at *6 (W.D. Tenn. Apr. 19, 2004); see also Fed. R. Civ. P. 26(b)(2)(i), (iii).

**A. Prefatory Statement**

Plaintiffs oppose GM's general objection to plaintiffs' prefatory statement, on the grounds that GM's objection appeared to limit GM's obligations under Fed. R. Civ. P. 34(a)(1). GM has stated in its written submissions filed with the court and at the hearings on plaintiffs' motion to compel that it was not GM's intent to limit those obligations. GM has agreed to provide a supplemental response to its objection to plaintiffs' prefatory statement to make clear that it has complied and will continue to comply with the Federal Rules in its searches for discoverable materials and in the preparation of its discovery responses. To the extent GM has not yet supplemented its response on this issue, it shall do so within 20 days from the date of this order.

**B. Interrogatory No. 2**

Plaintiffs have moved the court for an order compelling GM to list the names, addresses and telephone numbers of each person known or believed to possess information relevant to the design and testing of the roof structure and seat belt system for the driver and front seat passenger in the vehicle in question. Relying upon Rule 33(d), GM has referred plaintiffs to the documents that it has produced and which discuss these issues. In addition, GM has provided the names of the design release engineers for the seat belt system and the roof structure.

The court has examined the examples of the documents to which plaintiffs have been referred. Although these documents appear to display the names of GM employees, it is not clear from these documents who these employees are, what title they hold at GM, and what role they played in the design or testing of the roof structure or seat belt system for the 2005 Yukon. Therefore, within 20 days, GM shall provide the plaintiffs with a list of all GM employees who had substantive involvement in the design and/or testing of the roof structure or seat belt system for the 2005 Yukon. This list must include the employees' names, addresses, and telephone numbers if known, and a general description of the roles these employees played in the design and/or testing process.

**C. Interrogatories and Request for Production Nos. 5, 6, 7, 8, and 9**

Interrogatory and Request for Production number 5 asks GM to list and produce each document in its possession or control that contains information relevant to the design of the roof structure of the model vehicle in question. Interrogatory and Request for Production number 6 asks GM to list and produce each document in its possession or control that contains information relevant to the performance of the roof structure of the model vehicle in question. Interrogatory and Request for Production number 7 asks GM to list and produce documents that contain information relevant to the design of the driver's seat belt and buckle in the model vehicle in question. Interrogatory and Request for Production number 8 asks GM to list and produce each document in its possession or control that contains information relevant to the design of the model vehicle in question insofar as it relates to the handling and stability characteristics of the vehicle. Interrogatory and Request for Production number 9 asks GM to list and produce each document that contains information relevant to the design of the model vehicle in question insofar as rollover resistance is concerned.

Plaintiffs have moved to compel GM to provide the Bates numbers of responsive documents that GM has produced and to

conduct a reasonable search and respond accordingly to the requests. GM has represented to the court that it has provided the Bates numbers of responsive documents, that GM has conducted a reasonable search of the places where it is reasonably likely to find responsive information, and that GM will review its responses and serve plaintiffs with supplemental responses.[2] In addition, GM has stated that by listing specific documents in its responses to these discovery requests, GM did not intend to limit the scope of the discovery requests or "rewrite" plaintiffs' requests, but rather intended to explain to plaintiffs what documents were being produced in response to the requests and that additional documents would be produced.

The court finds that these discovery requests seek relevant information and are not otherwise overly broad or unduly burdensome. GM must produce documents responsive to these requests, which would include documents relating to design alternatives considered by GM but not adopted, relevant computer simulations and computer model testing, correspondence, meeting minutes, Autoliv testing, Madymo and dolly rollover testing, and

---

2. Regarding Request for Production No. 15, the parties have agreed that this request is subsumed within Interrogatory and Request for Production Nos. 5 & 6.

Adams and Vehsim testing.[3] To the extent GM has not yet supplemented its responses to these discovery requests, it shall do so within 20 days.

**D.   Interrogatory and Request for Production No. 10**

Interrogatory and Request for Production number 10 asks GM to list and produce each document in its possession or control that contains information relevant to the relationship, or lack thereof, if any, between roof strength and occupant protection or injury in a rollover. At the hearings on this motion, plaintiffs stated that these discovery requests were targeted at finding studies and documents supporting the studies on these issues. To the extent the request seeks studies and supporting documentation in GM's possession or control, the court finds that the request seeks relevant information and therefore the relevant documents must be produced. GM shall supplement its responses to these requests within 20 days.

---

3.   Although it appears from the transcript of the meet and confer that there was a dispute regarding the relevance of T/2h documents to this litigation, this issue was not specifically addressed in the motion to compel. Plaintiffs may file a motion to compel if they are unable, after meeting and conferring with GM's counsel, to resolve this issue. Also, the court notes that at the time that plaintiffs filed their motion to compel, they had not yet had an opportunity to review all of the documents produced by GM. Therefore, after reviewing these documents, if there are documents that plaintiffs believe have not yet been produced, they may seek to compel production after consulting with GM's counsel to attempt in good faith to resolve these disputes.

**E.   Interrogatory and Request for Production No. 11**

Plaintiffs have moved to compel GM to provide all documents that contain information relevant to the issue of existing, available, or proposed rollover resistance evaluation methods. GM has identified six such reports and has referred plaintiffs to GM's submissions to the National Highway Traffic Safety Administration regarding these matters.  GM has also agreed to review its responses to determine whether there are any studies of methods of evaluating rollover resistance other than those that are mentioned in the documents already provided. Accordingly, to the extent GM has not yet done so, GM shall supplement its responses to these requests within 20 days.

**F.   Interrogatory and Request for Production No. 13**

In Interrogatory and Request for Production number 13, plaintiffs ask GM to identify and produce all documents in its possession or control that contain information relevant to the issue of protecting occupants from injury in rollover crashes. The court has been informed that, pursuant to the meet and confer, the plaintiffs have limited their request to call for non-developmental testing which (a) used the same platform (i.e., scope) as the subject vehicle, (b) had belted occupants or dummies in at least one seat, and (c) was performed for the

purpose of investigating occupant protection in rollovers.  GM has agreed to conduct an appropriate search for such documents and to respond.  To the extent GM has not already done so, GM shall respond to these requests as modified within 20 days.

**G.    Interrogatory and Request for Production No. 14**

These requests seek materials from GM that contain information about the issue of rollover crashes in the real world or during test driving involving any model, production, or prototype of a GM Yukon, for all model years.  The court has been informed that plaintiffs have limited these requests to call for documents relating to all test track rollovers of Yukon vehicles and to the first five real world rollovers of any Yukon as well as the rollovers of vehicles within the scope of production set forth by GM in its prefatory statement.  GM has agreed to provide (a) accident reports of test track rollovers described above; (b) complaints, claim letters and incident reports regarding the first five real world rollovers of any Yukon reported to GM; and (c) complaints, claims or incident reports involving claims of personal injury arising out of a real world rollover and claimed defects in the roof, seat belts, handling, and stability or rollover resistance of a vehicle within the pertinent GM scopes.  GM shall respond to these requests as modified within 20 days.

**H.    Request for Production No. 16**

Request for Production number 16 asks that if GM contends there are differences between the 2005 GM Yukon and other model years of the Yukon in terms of the design and performance of the roof, front safety belts and/or rollover resistance, then GM should produce materials which it claims support that contention. The court has been informed that the parties have agreed that GM would provide a narrative explaining why it believes that vehicles not included in the scope are not substantially similar and that GM would also provide a brief explanation of what it believes the relevant substantive differences to be. GM shall provide this response within 20 days.

**I.    Request for Production No. 17**

Document request 17 asks GM to produce all lawsuits or consumer complaints in its possession or control relating to the rollover of a Yukon, alleged roof performance problems or issues, or the failure of a safety belt. The court has been informed that the plaintiffs have agreed to accept GM's responses provided they include all warranty claims involving an actual rollover. GM has advised the court that warranty claims are presented by dealers who have replaced a particular part and are seeking reimbursement for the part and the labor. GM submits that it can search for claims relating to a particular part number, but that its warranty system is not designed to search for the kind of

information Plaintiffs seek. Plaintiffs may depose a GM representative to determine whether GM can access this information and whether it may be able to obtain this information in another manner.

**J. Privilege Log**

Finally, to the extent GM has withheld or redacted portions of documents based on privilege or work product, GM shall provide plaintiffs with a privilege log within twenty days.

### III. CONCLUSION

For the reasons above, the motion to compel is GRANTED in part and DENIED in part.[4]

IT IS SO ORDERED.

                                       s/ Tu M. Pham
                                       TU M. PHAM
                                       United States Magistrate Judge

                                       September 29, 2008
                                       Date

---

4. It appears from the hearings on this motion and the parties' supplemental submissions that GM has already produced many of the responsive documents earlier this year. Of course, to the extent GM has not produced responsive documents, it must do so within 20 days.